UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JENNIFER C. HOFFMAN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) 06 C 4980 |
| v. | ) |
| | ) Judge George M. Marovich |
| ZURICH FINANCIAL SERVICES, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Jennifer C. Hoffman ("Hoffman")[1] filed in the Circuit Court of Cook County a one-count complaint in which she alleged that defendant Zurich Financial Services ("Zurich") violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq., by failing to provide her with a reasonable accommodation. Defendant removed the case to this Court on the basis of federal question jurisdiction. Before the Court is defendant's motion for summary judgment. For the reasons set forth below, the Court grants defendant's motion for summary judgment.

**I.    Background**

The following facts are undisputed unless otherwise noted.[2]

---

[1] Plaintiff refers to herself as Jennifer Hoffmann in some, but not all, pleadings. Her initial complaint listed her as Jennifer Hoffman, so that is the name the Court uses here.

[2] Local Rule 56.1 outlines the requirements for the introduction of facts parties would like considered in connection with a motion for summary judgment. The Court enforces the rule strictly. *See Ammons v. Aramark Uniform Services, Inc.*, 368 F.3d 809, 817-818 (7th Cir. 2004). Facts that are submitted but do not conform with the rule are not considered by the Court. For example, facts not included in a party's Statement of Material Facts or in a party's Statement of Additional Facts are not considered by the Court because to do so would rob the other party of the opportunity to show such facts are disputed. Asserted "facts" not supported by deposition testimony, documents, affidavits or other evidence admissible for summary judgment purposes are not considered by the Court. Finally, where one party supports a fact with admissible

In 2002 or 2003, plaintiff Hoffman injured her left arm when she tripped over a tow chain. The fall caused nerve damage to Hoffman's left arm. When she bent the arm for long periods of time, Hoffman experienced numbness and pain.

Despite the problem with her left arm, in October 2004, Hoffman accepted a full-time Payroll Analyst position with defendant Zurich Financial Services, a property and casualty insurer. As a Payroll Analyst, Hoffman was responsible for maintaining a manual check log, processing employee wage garnishments, pursuing the repayment of overpayments to employees and entering new hire data into the SAP system. SAP is computer software system that tracks, among other things, employee salaries, titles and promotions. At Zurich, access to SAP required a password and username. For the first approximately nine months that Hoffman worked for Zurich in the Payroll Analyst position, she was able to work full-time and felt that her duties kept her occupied on a full-time basis.

Notwithstanding her ability to work, Hoffman underwent surgery in June 2005 in an attempt to correct the nerve pain and numbness she sometimes experienced. The surgery left Hoffman unable to work for several months. While she recuperated, Hoffman took advantage of leave under the Family and Medical Leave Act ("FMLA") and short-term disability.

Hoffman returned to work, on a part-time basis, in September 2005. At first, her physician allowed her to work two half-days per week. While at work, Hoffman used a Transcutaneous Electrical Nerve Stimulator ("TENS") machine to help rehabilitate her arm. Her physician-imposed restrictions were gradually modified to allow her to work longer hours and more days per week. In the meantime, other employees and other departments completed the remainder of plaintiff's work. During this period of time, Hoffman was also taking advantage of

---

evidence and the other party denies the fact without the support of admissible evidence, the fact is deemed admitted.

her accrued leave time, such that she continued to be paid as though she were a full-time employee.

Hoffman's surgery was successful in the sense that it corrected the numbness in her left arm. She was left, however, with the occasional shooting, pinching and burning pain in her arm. That pain tends to occur after she has bent her arm for long periods of time. Typing exacerbates the problem. Hoffman has found that taking ibuprofen sometimes relieves her pain. She has also found that stretching her arms out sometimes lessens the pain from pinching. The pain Hoffman experiences in her left arm is permanent in the sense that she will continue in the future to experience the pain sporadically.

Hoffman's symptoms do not otherwise interfere with her life. She is able to clean, dust, vacuum, bathe herself and walk her dogs without problems. Sometimes, when she mows her lawn or shovels snow, she experiences pain the next day. Hoffman is able to type continuously for half an hour without pain.

By January 2006, Hoffman's physician had released her to work four days per week in the office and one day per week at home. According to Hoffman, the reasons she could work the fifth eight-hour day only at home were that working at home: (1) eliminated the commute, which exacerbated her pain; and 2) allowed her to work with a laptop and, hence, type with her arms extended.

Based on her new restrictions, Hoffman asked her supervisor, Rochell Raymond ("Raymond"), if she could work four days in the office and a fifth day at home. Raymond initially approved Hoffman's request, and, for two weeks, Hoffman worked four days in the office and a fifth day at home.

But Raymond quickly learned that it was against Zurich's policy for Hoffman to work at home. Raymond learned that Zurich's policy allowed only certain employees to work from

home. Specifically, only those employees who were exempt from the minimum wage and maximum hour requirements of the Fair Labor Standards Act ("FLSA") were allowed, under Zurich's policy, to work from home. Hoffman has put forth undisputed evidence that a number of Zurich's employees were allowed to work from home. Zurich has put forth undisputed evidence that each of those employees was an exempt employee. As Hoffman's Payroll Analyst position was a non-exempt position (for purposes of the FLSA), Zurich's policy did not allow her to work at home. Thus, after the initial two weeks of working four days in the office and two days at home, Hoffman was back to working four days per week and taking one day off.

By February 1, 2006, however, Hoffman had exhausted her paid leave time. Zurich converted Hoffman to part-time employment to allow her to continue to work until she was able to work full-time again.

On February 9, 2006, Hoffman informed Raymond that she did not know when she would be released to work full time. Raymond informed Hoffman that she would have to advertise for a full-time replacement for Hoffman and that Hoffman could remain in the position on a part-time basis only until Raymond could fill the position on a full-time basis. In the meantime, Raymond, other managers and Hoffman searched Zurich's internal postings for a part-time position for Hoffman. They did not find an internal position that met Hoffman's four-day-per-week restriction.

On March 14, 2006, Zurich again informed Hoffman (this time in writing) that the company could not accommodate her four-day-per-week restriction permanently. Zurich told her she could remain in the Payroll Analyst position only until it was filled. Zurich also told Hoffman that if she could return to work on a full-time basis before the position was filled, Hoffman could keep the Payroll Analyst position.

Later in March 2006, Hoffman's physician again changed Hoffman's work restriction. This time, Hoffman's physician restricted Hoffman to working four eight-hour days per week. That restriction remains in effect to this day.

By April, Zurich had hired a replacement for Hoffman. As it had warned plaintiff it would do, Zurich terminated Hoffman's employment on April 27, 2006.

Zurich's replacement did not last. The replacement quit the position within days. Zurich did not immediately replace Hoffman's replacement. Instead, Zurich hired someone into a newly-created exempt position with the same job title as Hoffman's. In November 2006 (after Hoffman filed her lawsuit), Zurich filled Hoffman's former position.

For her part, Hoffman has since taken a position (with a company other than Zurich) working three nine-hour days per week. In her current position, Hoffman types, prepares customer orders and prepares orders for shipment.

## II. Summary Judgment Standards

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When making such a determination, the Court must construe the evidence and make all reasonable inferences in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Summary judgment is appropriate, however, when the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "A genuine issue of material fact arises only if sufficient evidence favoring the nonmoving party exists to permit a jury to return a

verdict for that party." *Brummett v. Sinclair Broadcast Group, Inc.*, 414 F.3d 686, 692 (7th Cir. 2005).

## III. Discussion

In her complaint, Hoffman asserted that Zurich violated the Americans with Disabilities Act by failing to provide a reasonable accommodation. The Americans with Disabilities Act makes it unlawful to "discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Included in the definition of discrimination under the ADA is "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(5)(A). In order to prevail on her failure to accommodate claim, a plaintiff must establish that: (1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to provide a reasonable accommodation. *EEOC v. Sears, Roebuck & Co.*, 417 F.3d 789, 797 (7th Cir. 2005). With respect to the third element, the ADA requires the individual and the employer to engage in an interactive process to determine a reasonable accommodation, and the employer is liable under the ADA only if it is responsible for the breakdown in the interactive process. *Sears, Roebuck*, 417 F.3d at 797. In this case, plaintiff's claim fails on the first element.

The Court first considers whether Hoffman is disabled. The ADA defines disability as "a physical or mental impairment that substantially limits one or more of the major life activities of such individual" or as "being regarded as having such an impairment." 42 U.S.C. § 12102(2)(A) & (C). Major life activities are "those activities that are of central importance to daily life." *Toyota Motor Mfg. Ky, Inc. v. Williams*, 534 U.S. 184, 196 (2002). The EEOC lists as major life activities "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(I).[3]

Substantially in the phrase "substantially limits" means "considerable" or "to a large degree." *Toyota*, 534 U.S. at 196. The plaintiff's impairment–in its corrected state–must be so limiting, relative to someone in the general population. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 488-489 (1999); *Peters v. City of Mauston*, 311 F.3d 835, 843 (7th Cir. 2002). The standard for qualifying as disabled is "demanding," and the terms in the definition of disability "need to be interpreted strictly." *Toyota*, 534 U.S. at 197. To establish that she has a disability, plaintiff must offer "evidence that the extent of the limitation [caused by her impairment] in terms of [her] own experience . . . is substantial." *Toyota*, 534 U.S. 198 (citing *Albertson's, Inc. v. Kirkingburg*, 527 U.S. 555, 567 (1999)). The "impairment's impact must be permanent or long term." *Toyota*, 534 U.S. at 198. Finally, a plaintiff must put forth evidence that she is so limited as of the time of the alleged discrimination, i.e., as of the time of the alleged failure to accommodate or the alleged disparate treatment. *See Burnett v. LFW* Inc., 472 F.3d 471, 483 (7th Cir. 2006).

---

[3]The Supreme Court has noted that no agency was given authority to promulgate regulations interpreting "disability" and, hence, has not decided what deference the regulations deserve. *Toyota*, 534 U.S. at 194.

In this case, Hoffman argues that she is disabled by virtue of being substantially limited in the major life activity of working. The Supreme Court has questioned (due to the circularity of reasoning) but not decided whether working can be a major life activity under the ADA. *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 492 (1999); *EEOC v. Schneider Nat'l, Inc.*, 481 F.3d 507, 511 (7th Cir. 2007). Assuming working can be a major life activity, in order to establish that she has a disability, Hoffman would have to put forth evidence that she is unable to work in a broad range of jobs, rather than in a particular job. *Schneider*, 481 F.3d at 511; *EEOC v. Rockwell Int'l Corp.*, 243 F.3d 1012, 1017 (7th Cir. 2001). This means that "except in 'rare cases in which the [plaintiff's] impairments are so severe that [her] substantial foreclosure from the job market is obvious,' [she] must present 'some evidence of the number and types of other jobs' in the geographic region, from which [she] would be excluded." *Kupstas v. City of Greenwood*, 398 F.3d 609, 613 (7th Cir. 2005) (citing *Rockwell*, 243 F.3d at 1017). In *Rockwell*, for example, the Seventh Circuit explained that the EEOC was required to supply evidence of the "number and types of other jobs in Southern Illinois from which the job applicants were excluded" because of their impairment. *Rockwell*, 243 F.3d at 1017; *see also Burnett v. LFW Inc.*, 472 F.3d 471, 484 (7th Cir. 2006) ("Because [plaintiff] has failed to show (or even attempt to show) that his [restrictions] substantially limited his ability to perform a class or broad range of jobs, he has not established a substantial limitation in the major life activity of working.").

Here, Hoffman argues that she is "precluded from all jobs involving data entry requiring her to be in an office five full days per week." What is missing, however, is evidence of the number and types of jobs in the region where she lives. The plaintiff's burden at the summary judgment stage is to put forth admissible evidence from which a reasonable jury could conclude

that she is substantially limited in the major life activity of working. Simply stating that she is excluded from data-entry jobs that require five full days in an office is not sufficient. Hoffman's impairment is not that rare impairment that is obviously substantially limiting. Hoffman has failed to put forth sufficient evidence that she has a disability.

Furthermore, Hoffman has failed to show that she was a *qualified* individual with a disability for the entire time that she was requesting a reasonable accommodation. The ADA defines a "qualified individual with a disability" as an "individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires. For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of the job are essential." 42 U.S.C. § 12111(8). Plaintiff failed to put forth sufficient evidence that there was a reasonable accommodation that would have allowed her to perform the essential functions of her job during the entirety of the relevant time period.

The accommodation (permanent part-time work) Hoffman requested was not a reasonable accommodation. The ADA explicitly states that a reasonable accommodation "may include," among other things, "job restructuring, part-time or modified work schedules." 42 U.S.C. § 12111(9)(B). That does not mean, however, that working part-time is a reasonable accommodation in every case. Courts have concluded that part-time work can be a reasonable accommodation temporarily as employees transition back to working on a full-time basis. *See Pals v. Schepel*, 220 F.3d 495, 498 (7th Cir. 2000) ("gradual return to full-time work would have been a reasonable accommodation that the ADA required [defendant] to provide."). Still, because being capable of working full-time is often an essential function of a full-time job,

reassignment to a permanent part-time position is not a reasonable accommodation.  *See DeVito v. Chicago Park Dist.*, 270 F.3d 532, 534 (7th Cir. 2001) ("it is implicit in the cases that hold that a 'gradual return to full-time work would have been a reasonable accommodation,' that the ADA does not require permanent reassignment to a temporary light-duty job, and that regular attendance is an essential requirement of a job.") (internal citations omitted); *EEOC v. Yellow Freight Sys., Inc.*, 253 F.3d 943, 949 (7th Cir. 2001) ("Common sense dictates that regular attendance is usually an essential function in most every employment setting; if one is not present, he is usually unable to perform his job."); *Waggoner v. Olin*, 169 F.3d 481, 484 (7th Cir. 1999) ("The fact is that in most cases, attendance at the job site is a basic requirement of most jobs."); *Henry v. HDS Metrocom*, Case No. 04 C 4888, 2005 WL 1651044 at *12 (N.D. Ill. July 8, 2005) ("A part-time schedule is not a reasonable accommodation for a full-time job and an employer is not required to reallocate portions of an employee's essential functions to other employees."); *Caroselli v. Allstate Ins. Co.*, Case No. 01 C 6834, 2004 WL 407004 at *5 (N.D. Ill. Feb. 23, 2004) ("a part-time schedule is not a reasonable accommodation for a full-time job").  Accordingly, an employee who cannot perform that essential function, i.e., cannot work the full-time schedule, is not a "qualified individual" with a disability (as those terms are defined under the ADA) and is not protected by the ADA.

In this case, Hoffman could not show that she was a "qualified" individual for the entire time period over which she claims defendant is liable for failing to provide a reasonable accommodation.  By March 2006, Hoffman's physician restricted her to working four days per week.  Her inability to work a full-time schedule for her full-time job means that Hoffman was

not a qualified individual by March 2006, even if she had been able to establish that she was disabled.[4]

For these reasons, defendant Zurich is entitled to judgment as a matter of law on plaintiff's claim for failure to accommodate. The Court grants defendant's motion for summary judgment.

## IV. Conclusion

For the reasons set forth above, the Court grants defendant's motion for summary judgment.

ENTER:

*George M. Marovich*
_____
George M. Marovich
United States District Judge

DATED: November 28, 2007

---

[4]The Court does not mean to imply that Hoffman failed to put forth sufficient evidence from which a reasonable jury could conclude that she could perform the essential functions of her position with a reasonable accommodation before March 2006. To the contrary, Hoffman put forth admissible evidence from which a reasonable jury could have concluded that she could perform the essential functions of her job while she was restricted to working four days per week in the office and one day at home. Although defendant argued that working at home was not a reasonable accommodation because its policy prohibited non-exempt employees from working at home, plaintiff put forth evidence that defendant later replaced her position with an exempt position. Based on these facts, a reasonable jury could conclude that defendant could have provided a reasonable accommodation by changing her position to an exempt position and allowing her to work at home on day per week. Ultimately, this evidence is irrelevant, however, because plaintiff failed to establish that she is disabled for purposes of the ADA.